IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| KEVIN MCHUGH & JENEEN MCHUGH, | HON. JEROME B. SIMANDLE |
| Plaintiffs, | Civil No. 07-2970 (JBS) |
| v. | |
| JUANITA JACKSON, et al., | **MEMORANDUM OPINION** |
| Defendants. | |

**SIMANDLE**, District Judge:

This matter is before the Court on Defendant Gambro Healthcare, Inc.'s motion for summary judgment. [Docket Item 47.] The Court finds as follows:

1. The facts of this case and the arguments presented on this motion for summary judgment are discussed in more detail in this Court's opinion of March 2, 2010. McHugh v. Jackson, Civil No. 07-2970, 2010 WL 744125, at *4-9 (D.N.J. March 2, 2010). Briefly, this case arises out of a motor vehicle accident in which Kevin McHugh was allegedly rear-ended by Juanita Jackson. The investigating police officer found that the accident was a result of Ms. Jackson's inattention. (Schuenemann Dep. 23:7-11, October 15, 2008.) Plaintiffs attribute this inattention to hypotension caused by the dialysis treatment Ms. Jackson received at Defendant Gambro Healthcare's facility shortly before the accident. Plaintiffs claim that Gambro Healthcare allowed Ms. Jackson to leave the facility without fully assessing her

vascular stability by taking a standing blood pressure measurement. Plaintiffs allege that this measurement would have shown that Ms. Jackson was hypotensive as a result of fluid loss during the treatment, and that they therefore could have prevented the accident if they had taken the measurement.

2. To support this theory that hypotension caused Ms. Jackson's inattention, Plaintiffs hired two experts, Dr. Daisy Rodriguez and Nurse Cheryl Lachman. The experts wrote reports that discuss the effects of dialysis on patients in general, and the effect Ms. Jackson's dialysis might have had on her on the day in question. Nurse Lachman's report discusses the risks associated with the kind of dialysis care Ms. Jackson received, while Dr. Rodriguez's report states a more concrete opinion that what actually happened in this case is that Ms. Jackson's inattention was caused by hypotension.

3. Defendant seeks to exclude the testimony of Dr. Rodriguez. Defendant argues, among other things, that Dr. Rodriguez's method for determining what actually happened on the day in question was unreliable under Rule 702 of the Federal Rules of Evidence.[1] Defendant also maintains that Nurse

---

[1] Federal Rule of Evidence 702 provides:
   If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of

Lachman's report provides an insufficient basis upon which to determine what caused Ms. Jackson's inattention.  Defendant moves for summary judgment because without the testimony of Dr. Rodriguez, and if Nurse Lachman's report is insufficient on its own, then Plaintiffs cannot prove causation.

    4.  In an opinion and order of March 2, 2010, this Court held the motion for summary judgment in abeyance until the Court could assess the reliability of Dr. Rodriguez's method under Rule 702, Fed. R. Evid., according to the requirements set forth in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993).  McHugh v. Jackson, Civil No. 07-2970, 2010 WL 744125, at *4-9 (D.N.J. March 2, 2010).  Based on Dr. Rodriguez's expert report, her method appeared to involve examining Ms. Jackson's known symptoms on the day of the accident (i.e. fluctuations in blood pressure during dialysis, inattention at the time of the accident, and disorientation after the accident), and determining based on her medical knowledge what likely caused these symptoms.  When there are multiple possible causes of a patient's symptoms, this method of diagnosis is known as differential diagnosis, a method discussed at length in In re Paoli R.R. Yard PCB Litig.,

---

> an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

35 F.3d 717, 741-43 (3d Cir. 1994). The Paoli court found that "all of the experts agree that at the core of differential diagnosis is a requirement that experts at least consider alternative causes." Id. at 759. The Court held that expert testimony based on differential diagnosis should be excluded if:

> [The doctor] engaged in very few standard diagnostic techniques by which doctors normally rule out alternative causes and the doctor offered no good explanation as to why his or her conclusion remained reliable, or the defendants pointed to some likely cause of the plaintiff's illness other than the defendants' actions and [the doctor] offered no reasonable explanation as to why he or she still believed that the defendants' actions were a substantial factor in bringing about that illness.

Id. at 760. This Court found that Dr. Rodriguez needed to explain how it was she was able to reliably determine that the dialysis treatment, and not ordinary distraction or some other factor, caused Ms. Jackson's inattention. This explanation was especially necessary in light of Ms. Jackson's testimony that she felt fine on the day in question, and given the investigating police officer's testimony that Ms. Jackson's post-accident disorientation was consistent with his experience seeing people who had just been involved in a motor vehicle accident. McHugh, 2010 WL 744125, at *7.

5. On March 26, 2010, the Court convened a hearing to receive testimony from Dr. Rodriguez. At the hearing, Dr. Rodriguez conceded that she did not consider other possible causes of Ms. Jackson's inattention, and that she did not perform

a differential diagnosis, but instead crafted one theory of a medical cause for the inattention.  She testified only that the dialysis treatment "could have" led to hypotension, and that this condition "could have" caused Ms. Jackson's inattention leading to the accident.  Under New Jersey law, the opinion of a medical expert that a deviation from a standard of care "could have" caused a condition leading to an injury is insufficient; the expert must be able to testify to such an opinion to a "reasonable medical certainty."  See Hubbard v. Reed, 774 A.2d 495, 498-99 (N.J. 2001); Buckelew v. Grossbard, 435 A.2d 1150, 1157-58 (N.J. 1981).  Dr. Rodriguez has not done so.

6.  When asked about the details of her method, Dr. Rodriguez testified that she did not consider Ms. Jackson's deposition testimony that Ms. Jackson experienced no subjective symptoms of fatigue or disorientation on the day in question.  Dr. Rodriguez noted that Ms. Jackson also testified that she often pretended to feel better than she did because she wanted to leave the dialysis center as quickly as possible.  But neither Dr. Rodriguez nor Plaintiffs' counsel explained why this history of misleading the nurses at Gambro would cause Ms. Jackson to make false, self-implicating claims about the day of the accident in her deposition testimony.  Dr. Rodriguez also testified that she did not consider Ms. Jackson's post-accident behavior in crafting her theory, even though her report discusses Ms.

Jackson's post-accident behavior as supporting her theory. Finally, Dr. Rodriguez testified that she did not take into account the fact that the estimated time between Ms. Jackson's release from the dialysis facility and the time of the accident exceeds the longest documented time it took for Ms. Jackson to recover her vascular stability after dialysis. In other words, Dr. Rodriguez's methodology did not seek to explain why the time of the accident was not too remote from the time when Jackson's dialysis was concluded.

    7.    Having taken the testimony of Dr. Rodriguez and reviewed the record, the Court finds that neither Nurse Lachman nor Dr. Rodriguez formed an opinion based on a reliable method about how likely the dialysis theory of causation is as compared to all other possible causes of momentary inattention while driving. Nurse Lachman simply offers no such opinion in her expert report. She was able to say only that the kind of dialysis treatment Ms. Jackson received on the day of the accident "increased Ms. Jackson's chance of blood pressure instability, dizziness, and fatigue." (Gebauer Cert., Ex-I ("Lachman Report"), at 4.) Dr. Rodriguez's testimony at the <u>Daubert</u> hearing revealed that the more concrete conclusions of her expert report were not reached by considering and ruling out alternative causes. Instead, at most Dr. Rodriguez could reliably conclude that the dialysis treatment was one possible

cause of the accident among many causes of distraction, inattention or other failure to drive with due care.

    8.  Proof of causation in this case requires more than the identification of one theoretically possible cause of the accident.  As this Court previously noted, the court in Paoli offered two examples of when alternative causes need not be examined when determining what caused a patient's condition.  Paoli, 35 F.3d at 760 n.30.  The first example was of a patient with x-rays showing a fractured arm who tells the doctor that he hurt the arm in a biking accident.  Id.  The court noted that the doctor could reliably conclude that the patient had a fractured arm caused by a biking accident without further attempts to rule out other causes.  Id.  The second example involves a patient exposed to an illness-causing chemical.  Id.  Even though the patient was also exposed to other substances that could cause the illness, the doctor might reliably conclude that the exposure to the chemical caused it if there is sufficient information about probabilities.  Id.

    9.  The condition Dr. Rodriguez and Nurse Lachman seek to explain, Ms. Jackson's momentary inattention at the time of the accident, is not so self-evidently the result of the dialysis treatment that no effort to consider other possible causes is required.  Moreover, nothing in Ms. Jackson's own statements or testimony suggests that she felt dizzy, fatigued, or otherwise

7

impaired by her dialysis at the time of the accident. Dr. Rodriguez admitted that inattention can have any number of non-medical causes. As in the second example above, when medical experts cannot rule out other causes of a patient's condition, causation can still be proved based on conclusions about the degree of probability that the identified cause yielded the result in question.

    10. In the absence of consideration of alternative causes, and without some opinion reached by a reliable method as to the degree of risk of hypotension Ms. Jackson faced at the time of the accident, whether quantitative or qualitative, Plaintiffs' expert reports amount to little more than speculation about one possible cause. Such speculation is an insufficient basis upon which to proceed to trial on causation when the circumstances admit of other obvious explanations.

    11. Plaintiffs' counsel correctly points out that the other possible explanations for Ms. Jackson's inattention — that she was merely distracted by something, like a daydream or another car, etc. — can neither be proved nor disproved. But the fact that there is no evidence to support or undermine many of the possible causes of the accident does not mean that simply pointing to one possible cause is sufficient to meet Plaintiffs' burden. If Plaintiffs were permitted to simply speculate about one possible cause, leaving Defendant to disprove that theory,

then the Court would be placing the burden of persuasion on the Defendant to prove that the medical treatment it rendered was not the cause of the accident. Instead, the burden of persuasion rests on Plaintiffs. If there is no admissible evidence that if believed would prove that Defendant's conduct was a substantial cause of the injury instead of some other cause, then Plaintiffs cannot meet that burden.

12. Plaintiffs have failed to adduce admissible evidence from which a reasonable jury could find that Ms. Jackson was hypotensive at the time of the accident, and that this hypotension was probably the cause of Ms. Jackson's inattention. When there is an absence of evidence to prove an essential element of Plaintiffs' case, the Defendant prevails on summary judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Defendant's motion for summary judgment must be granted. Plaintiffs' claims against Gambro Healthcare, Inc. will be dismissed because, upon this record, no reasonable jury could find that Gambro's failure to obtain Ms. Jackson's standing blood pressure after dialysis was a substantial cause of Jackson's negligence in colliding with Plaintiffs' vehicle half an hour later.

13. What remains in this case are Plaintiffs' claims against Ms. Jackson, and Ms. Jackson's cross-claim against Gambro Healthcare for contribution. Gambro Healthcare's notice of

motion seeks an Order "granting summary judgment, dismissing plaintiff's Complaint and any and all crossclaims herein," but the brief in support of the motion refers only to Plaintiffs' Complaint against Gambro Healthcare, not the cross-claim. Nonetheless, Ms. Jackson did not oppose the summary judgment motion, and there is no evidence that the dialysis performed by Gambro Healthcare contributed to the accident.  Accordingly, Ms. Jackson's cross-claim against Gambro Healthcare likewise cannot survive this summary judgment motion.

    14.   The accompanying order will be entered.


**May 7, 2010**                                     **s/ Jerome B. Simandle**
Date                                         JEROME B. SIMANDLE
                                             United States District Judge